UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CORNELIUS RICHARD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:19-CV-01568-X |
| RANDALL ZABOJNIK, RODNEY | § | |
| STOVALL, and CITY OF | § | |
| CARROLLTON, | § | |
| | § | |
| *Defendants*. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This suit involves section 1983 claims stemming from a DWI arrest.  Before the Court are (1) plaintiff Cornelius Richard's motion to amend the scheduling order [Doc. No. 22]; (2) defendants Officer Randall Zabojnik and Sgt. Rodney Stovall's (collectively, the officers) motion for summary judgment [Doc. No. 26]; and (3) Richard's motion for leave to file an amended complaint [Doc. No. 31].  Richard filed his motion to amend the complaint after the officers filed their summary judgment motion, and the Court **DENIES** the motion to amend as untimely.  Richard's motion to amend the scheduling order was to enable a preview of the forthcoming summary judgment arguments to enable Richard to determine what limited discovery on qualified immunity he would need.  But Richard has now seen and fully responded to the summary judgment motion, and the Court does not need factual clarification to rule on the qualified immunity defense.  As such, the Court **DENIES** the motion to amend the scheduling order.  Finally, the Court **GRANTS**

the summary judgment motion because the officers have qualified immunity for Richard's claims for unlawful arrest, malicious prosecution, and failure to intervene.

## I.      Factual Background

On June 29, 2017, City of Carrolton Police Sergeant Zabojnik, Officer Stovall, and Officer Gene Kimpton responded to a call reporting a male was passed out in the driver's seat of a car in the driveway of a business.  Each officer engaged their body cams and dash cams on arrival.  The officers observed Richard passed out or asleep with his backpack over his face in the driver's seat of his car, which was parked in the fire lane of a business driveway with the keys in the ignition.  The temperature on that late June day was hot.  Blocking a fire lane is a municipal offense.[1]  Officer Stovall nudged Richard's shoulder to wake him, and Stovall asked him why he was asleep and in a fire lane.  The officers believed Richard's responses were delayed, and Richard failed to respond to questions such as whether he had drugs or alcohol that morning.  Richard responded that his car wouldn't start and he would try again in an hour.  Officer Stovall asked Richard to exit the vehicle so he could try to start the car, which he successfully did.

Officer Stovall initiated an investigation for Driving While Intoxicated. Richard consented to a field sobriety test.  During the first test, for Horizontal Gaze Nystagmus, Officer Stovall observed equal tracking and pupil size in both eyes, but Sergeant Zabojnik observed Richard had nystagmus in his eyes.  Sergeant Zabojnik

---

[1] *See* City of Carrollton Municipal Ordinances § 503.4, *at* https://www.cityofcarrollton.com/Home/ShowDocument?id=2398 ("Fire apparatus access roads shall not be obstructed in any manner, including the parking of vehicles.").

has been certified as a drug recognition expert since 2013.[2]

After the officers discussed the test, Sergeant Zabojnik administered a second Horizontal Gaze Nystagmus test.  Sergeant Zabojnik instructed Richard to point his chin down (given that the sun that day caused squinting that could skew the test). Sergeant Zabojnik observed Richard had a lack of smooth pursuit in both eyes and sustained nystagmus at maximum deviation in both eyes.  Sergeant Zabojnik observed a total of 4 of the possible 6 clues from the second Horizontal Gaze Nystagmus test.  Officer Stovall responded that he did not see the 4 clues when administering the first test.  Officer Stovall ultimately concurred with Sergeant Zabojnik's findings during the first and second tests and indicated he did not believe Sergeant Zabojnik had fabricated or falsified evidence.

Officer Stovall then administered the Walk and Turn test.  Richard exhibited 2 clues (stopping while walking just before and after he turned and using his arms to balance).  Sergeant Zabojnik and Officer Stovall observed both clues, which they concluded demonstrated impairment due to drugs and/or alcohol.  Officer Stovall then administered the One Leg Stand test, where Richard exhibited 2 clues (swaying and using his left arm to balance).  Sergeant Zabojnik and Officer Stovall again observed both clues, which they concluded demonstrated impairment due to drugs and/or alcohol.

Officer Stovall proceeded to the One Leg Stand test.  Richard exhibited clues

---

[2] Sgt. Zabojnik's experience (in addition to his training) exceeded Officer Stovall's in this regard.  Sgt. Zabojnik typically worked night shifts in 2017, encountering these situations more frequently than Officer Stovall who typically worked day shifts at that time.

of swaying and using his left arm to balance—indicating intoxication or impairment. Thus, each field sobriety test indicated intoxication or impairment.  Officer Stovall and Sgt. Zabojnik each found that the totality of the circumstances provided probable cause to arrest Richard for Driving While Intoxicated.  And Officer Stovall made that arrest.  And the following day, a Magistrate confirmed that probable cause existed for the arrest based on Officer Stovall's affidavit.

In October 2017, the blood test taken after the arrest occurred returned as negative. Sgt. Zabojnik's affidavit indicates a negative test does not mean a detainee was not under the influence of drugs or alcohol because the process tests for the most common intoxicants.  The chief of police for Carrollton also believed probable cause for the arrest existed based on the video recordings and the incident report.

Richard brought claims against the officers for: (1) false arrest because they allegedly fabricated evidence to obtain probable cause; (2) malicious prosecution; and (3) failure to intervene to prevent each other from violating Richard's rights.  Richard also brought a claim against the city for *Monell* liability.  The officers moved for summary judgment on the claims against them based on the affirmative defense of qualified immunity.

## II.    Legal Background

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."[3]  "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]  Courts "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[5]  Thus, "the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[6]

Regarding qualified immunity, the affirmative defense generally shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[7]  Qualified immunity "reflect[s] an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."[8]  Substantively, qualified immunity protects government officials from suit and liability unless their alleged conduct: (1) violated a Constitutional or statutory right; and (2) the illegality of the alleged conduct was clearly established at

---

[3] FED. R. CIV. P. 56(a).

[4] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013).

[6] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quotation marks omitted).

[7] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[8] *Id*. at 807 (citation and quotation marks omitted).

the time.[9]  "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."[10]  Also, the Supreme Court has admonished that clearly established law requires a "high degree of specificity" and that we lower courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."[11]  A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful."[12]

Applying qualified immunity to a false arrest or malicious prosecution claim, an officer is entitled to qualified immunity where the officer had arguable probable cause to arrest a plaintiff for a related offense.[13]  "[I]f officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized."[14]

### III.   Application

The Court will address the two procedural motions (to amend the scheduling order and the complaint) before addressing summary judgment.

---

[9] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

[10] *Id.*

[11] *Id.* (quotation marks omitted).

[12] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[13] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

[14] *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

A.      Motion to Amend Scheduling Order

The first filed of the three pending motions is Richard's motion to amend the scheduling order.  This case began with Judge Kinkeade, who enters scheduling orders that address qualified immunity on an expedited basis to ensure the right to immunity from suit in cases where qualified immunity applies.  The scheduling order here allows a party to move for leave to conduct limited discovery if the defendants move for summary judgment based on qualified immunity.  The order also requires the filing of a motion for discovery within 14 days of the filing or a notice of intent to move for summary judgment based on qualified immunity.  Richard did just that but asked to amend the scheduling order so he could see the summary judgment arguments before moving for specific discovery.  Alternatively, Richard asks to depose three witnesses.  But since that time, the officers filed their motion for summary judgment.  And Richard responded without a specific request for discovery.  Even if the request to depose three witnesses qualifies, it does not change the outcome.  Qualified immunity discovery is only allowed when: (1) the complaint adequately pleads that the defendants are liable for the alleged harm and that a qualified immunity defense is defeated, and (2) the Court remains unable to rule on the immunity defense without further clarification of facts.[15] Assuming for the sake of argument that the complaint meets the first element, as explained below, the Court needs no further factual clarification to rule on the qualified immunity defense.  As such, the Court denies the motion to amend the scheduling order.

---

[15] *Patel v. Texas Tech Univ.*, 727 F. App'x 94, 95 (5th Cir. 2018).

B.      Motion to Amend Complaint

Over one month after Zabojnik and Stovall filed their motion for summary judgment, Richard filed a motion for leave to amend his complaint to include a claim for fabrication of evidence.  The defendants responded that: (1) the motion violated Local Rule 15.1 by not attaching a proposed amended complaint; (2) a claim for fabrication of evidence would be derivative of the claim for false arrest Richard currently has and therefore futile; and (3) amending the complaint would prejudice the defendants by mooting the summary judgment.   Richard responded by: (1) attaching a proposed amended complaint to his reply; (2) contending his fabrication of evidence claim is under a different constitutional provision and thus not futile; and (3) the mooting of the summary judgment motion is not undue prejudice.  The Court agrees with the defendants that, in this qualified immunity context, the motion will cause undue delay and prejudice the defendants.

Ordinarily, this Court takes a dim view of amending pleadings after summary judgment motions are on file.  But this is no ordinary case.  When qualified immunity is involved, the Supreme Court and Fifth Circuit have admonished that qualified immunity involves immunity from suit (not just liability) and we lower courts are to decide whether qualified immunity exists as expeditiously as possible.[16]  Richard admits his amended complaint would moot the summary judgment motion and start the whole process over.  This is something the Court finds unacceptable in a case

---

[16] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

where it is to reach a decision on qualified immunity as expeditiously as possible—especially given that Richard gave no good cause explanation for his failure to include a fabrication of evidence claim earlier in this proceeding. Accordingly, the Court denies Richard's motion for leave to amend his complaint.

### C.   Motion for Summary Judgment

The motion for summary judgment raises qualified immunity for each of Richard's three claims against the officers. The Court takes each claim in turn.

### 1.   Unlawful Arrest

Richard's first claim against the officers is for unlawful arrest. An arrest violates the Fourth Amendment if it lacked probable cause.[17] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[18] Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such an activity."[19] Also, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[20] A person commits the offense of Driving While Intoxicated in Texas by either "not having the normal use of mental or physical faculties by reason

---

[17] *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).

[18] *Id.* (quotation marks omitted).

[19] *Wesby*, 138 S. Ct. at 586 (quotation marks omitted).

[20] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994).

of the introduction of alcohol" or another substance or "having an alcohol concentration of 0.08 or more."[21]

Richard's nonconclusory allegations regarding the unlawful arrest claim are as follows. Richard claims his car was having engine trouble, and he had success in the past after giving the engine time to rest. He claims his car died in the public driveway of a commercial parking lot next to a red fire truck line. Richard alleges he decided to sleep while giving his engine a chance to rest. He alleges that Officer Stovall responded to a call that a male was passed out in the driver's seat of his car, and Officer Kimpton assisted. Richard claims that Officer Stovall found him asleep in his car, and he woke up immediately when Officer Stovall waked him. He alleges he told the officers that he was ok and that he was having car trouble and that was the reason his car was stopped there. Richard further alleges Officer Stovall asked him what time he believed it to be, and Richard responded that it was 11:20 AM (only 12 minutes off from the actual time of 11:32 AM). He alleges Officer Kimpton asked Richard for his identification, and he showed that his identification was in his left pocket before reaching for it and gave his name in response to Officer Stovall's question. Plaintiff alleges that he clearly responded in the negative to Officer Stovall's questions regarding whether he had been drinking or had any medical problems.

Richard alleges that Officer Kimpton ran his license and determined there were no warrants. He claims Officer Stovall then asked him if he had shoes to put

---

[21] TEX. PENAL CODE §49.01(2).

on and to get out of the car.  Richard alleges that he eventually agreed to get out of his car after Officer Kimpton threatened that "if you don't cooperate, we will just go ahead and arrest you for parking in a fire lane.  We'll leave it at that and impound your car, so you've got a choice to make right now."[22]  He alleges that he put on his shoes to get out of his car, and that, at that time, Sgt. Zabojnik arrived on scene. Richard claims that he stepped out of his vehicle and was surrounded by the three officers.

Richard alleges that the date of the arrest fell within the Independence Day WAVE period, and that, upon information and belief, Sgt. Zabojnik was working a STEP[23] shift at the time of the arrest and knew that the City needed to meet "baseline DWI-related arrests" and a WAVE period DWI-related arrest goal.[24] Plaintiff alleges that Officer Stovall was able to start Mr. Richard's car and that an "engine light" and "warning light" on the dashboard, corroborating his explanation for why he was stopped.

Richard alleges he ultimately agreed to take the field sobriety tests after Officer Stovall told him that he could be arrested for being parked in a fire lane without taking the tests.

Richard alleges that Officer Stovall had him take the Horizontal Gaze Nystagmus test, Officer Stovall found that he exhibited none of the six possible clues

---

[22] Richard's Complaint ¶ 70 [Doc. No. 1].

[23] Selective Traffic Enforcement Program Grant (STEP) is a state and federal funded grant program that is managed and controlled by the Texas Department of Transportation.

[24] Richard's Complaint ¶ 75 [Doc. No. 1].

indicating impairment on the nystagmus test, and Officer Stovall told him he could return to his car.  Richard alleges that he had not consumed any drugs or alcohol that day.

Richard alleges that Sgt. Zabojnik called him back over to administer the nystagmus test a second time—despite Officer Stovall finding no clues with the first administration of the test.  Richard alleges that after the second nystagmus test, Sgt. Zabojnik told Officer Stovall that he witnessed four clues, thereby reaching the decision point for the nystagmus test.  He alleges that Officer Stovall told Sgt. Zabojnik that he did not see any clues, and that Officer Stovall can be seen "being clearly perplexed and confused" by Sgt. Zabojnik claiming there were four clues.[25]

Richard alleges that Sgt. Zabojnik then told Officer Stovall that either Officer Stovall could continue the DWI investigation or Sgt. Zabojnik would do it.  According to Richard, Officer Stovall elected to continue the investigation and then made him perform the Walk and Turn test.  Richard alleges that the officers did this with knowledge that there was no probable cause or reasonable suspicion at this point.  He alleges that Officer Kimpton told Sgt. Zabojnik that he did not smell any alcohol on Richard.  Richard further alleges he performed the Walk and Turn test exactly as Officer Stovall demonstrated, but that Officer Stovall then had him perform the One Leg Stand test—which he also allegedly performed exactly as Officer Stovall demonstrated.

Richard alleges that, following the One Leg Stand test, Officer Stovall asked

---

[25] Richard's Complaint ¶ 94 [Doc. No. 1].

Sgt. Zabojnik what the four clues were that he saw on the nystagmus test, and that Sgt. Zabojnik told Officer Stovall that he saw lack of smooth pursuit in each eye and distinct and sustained nystagmus in each eye.  Richard alleges that the video shows Officer Stovall "was experiencing mental distress" as a result.[26]

Richard alleges that Officer Stovall then arrested him, placing him in handcuffs, putting him in the back of his police car, and taking him to jail, while Sgt. Zabojnik stood by and watched.  He alleges he consented to a blood test and that no alcohol was detected in his blood.  The results of the blood test were not issued by the toxicology lab until several months after the arrest, and, per Sgt. Zabojnik's affidavit, the toxicologists did not test for all possible intoxicants that could impair drivers.

Richard also bases his false arrest claim against Officer Stovall on the allegation that he forwarded false evidence to a judge in the form of his Affidavit for Arrest Warrant or Capias and submitted that Affidavit to a judge for the determination of probable cause.  But the complaint does not include the affidavit to which it refers or identify what portion of that affidavit is allegedly false.

Richard alleges that he suffered damages as a result of the alleged unlawful arrest, such as the cost of hiring a defense attorney who obtained a dismissal of the DWI charges.

As an initial matter, Richard's unlawful arrest claim is based on Carrollton police making the arrest during a heightened enforcement WAVE period and Sgt. Zabojnik being on a STEP shift, thereby focusing on making certain DWI arrest

---

[26] Richard's Complaint ¶ 104 [Doc. No. 1].

quotas to financially benefit him.  The officer's evidence refutes that allegation, and Richard has no evidence to back it up.

Sgt. Zabojnik's affidavit states that he "was not working any STEP program on" the date of the arrest, and it was his "understanding that no other officer, including Officer Stovall and Officer Kimpton, was working STEP on" the date of the arrest.[27]  He further testifies that it is his "understanding that the Carrolton Police Department was not participating in the STEP Independence Wave Program at that time.  I was not trying to meet any arrest quota under STEP or any program.  No such quota was ever imposed."[28]  He further confirmed that,

> [w]hen Mr. Richard was arrested, I did not believe that his arrest would provide a financial benefit to myself or the City with regards to STEP. It is also my understanding that Mr. Richard's arrest would not count as an arrest calculated towards or impacting STEP performance goals, especially as none of the officers involved were working a STEP shift and as the arrest took place during the day and therefore outside of the STEP WAVE period.[29]

Officer Stovall's affidavit confirmed this testimony, further indicating he had never worked a STEP program.[30]  And the police department's compliance manager (who oversees involvement in the STEP program) testified that "STEP shifts occur only during the night shift" and that no officers signed up to work STEP WAVE shifts

---

[27] Appendix in Support of Defendant Officers' Motion for Summary Judgment at 6 [Doc. No. 28-2 at 6].

[28] Appendix in Support of Defendant Officers' Motion for Summary Judgment [Doc. 28-2 at 6]..

[29] Appendix in Support of Defendant Officers' Motion for Summary Judgment [Doc. No. 28-2 at 6].

[30] Richard objects to certain parts of Officer Stovall's affidavit regarding what Sgt. Zabojnik said as hearsay.  [Doc. No. 32 at 9].  The Court in this ruling is not relying on any of the objected to portions of Officer Stovall's affidavit and is looking only to Sgt. Zabojnik's affidavit for evidence of what he said.

during the Independence Day period of June 24, 2017 to July 5, 2017.[31]  As a result, there was no financial incentive to arrest Richard for DWI.

More fundamentally, the evidence supports a finding that the officers had probable cause based on the totality of the circumstances at the time of the arrest. The field sobriety tests and the other facts and circumstances confirm that the officers had probable cause to arrest Richard.  Further, the undisputed facts confirm Richard was parked blocking a fire lane, lending credence to the facts supporting an arrest for DWI.[32]  Additional summary judgment evidence confirms probable cause for an arrest for DWI.  Sgt. Zabojnik's affidavit indicates he observed the requisite clues in each administration of the nystagmus test, and the video confirms him observing the clues. Further the video and affidavits of the officers confirm Richard swayed during the One Leg Stand test.  When, as here, "there is a videotape that discredits the nonmovant's description of facts," the court may "consider the facts in the light depicted by the videotape."[33]

In addition, the facts of Richard exhibiting delayed responses to questions in the video and Officer Stovall being able to start his car immediately also support a finding of probable cause at the time.  The negative blood test returned months later

---

[31] Appendix in Support of Defendant Officers' Motion for Summary Judgment [Doc. No. 28-5 at 2].

[32] The officers contend they had probable cause to arrest Richard for blocking a fire lane.  While this is ordinarily a sufficient basis to raise to refute an unlawful arrest claim, *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), Richard contends there is no basis in the summary judgment record or arguments that this particular municipal code violation is an arrestable offense.  The officers did not respond with a legal argument that blocking a fire lane is an arrestable offense.  As a result, the Court assesses these facts on whether they support probable cause for the DWI arrest and not whether they support an independent arrest for blocking a fire lane.

[33] *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quotation marks omitted).

and could not affect the facts and circumstances at the time of the arrest. Moreover, the magistrate's confirmation that probable cause existed for the arrest further forecloses Richard's unlawful arrest claim.[34] Because the summary judgment record demonstrates the officers reasonably believed they had probable cause (and did have probable cause) to make an arrest based on the totality of the circumstances at the time of the arrest, and a magistrate confirmed probable cause existed, they are entitled to qualified immunity on Richard's unlawful arrest claim and the Court dismisses that claim.

### 2. Malicious Prosecution

Richard's malicious prosecution claim alleges the officers accused Richard of DWI without genuine probable cause and made "statements to judges and prosecutors with the intent of exerting influence to institute and continue the judicial proceedings."[35] Specifically, Richard alleges Sgt. Zabojnik made the statement that Plaintiff exhibited four clues on the HGN test, that Officer Stovall "submitted an Affidavit supporting those false contentions," that they made these statements were knowingly false, and that they withheld facts regarding their manipulation from these authorities.[36]

---

[34] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."). Richard claims this confirmation of probable cause was predicated on evidence Stovall fabricated. The Court disagrees with this conclusion. The Court's determination that the officers reasonably believed they had probable cause to arrest Richard for DWI negates Richard's argument that Officer Stovall fabricated evidence.

[35] Richard's Complaint ¶ 139 [Doc. No. 1].

[36] Richard's Complaint ¶ 140 [Doc. No. 1].

The Fifth Circuit has observed that: "The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted."[37]  And the Fifth Circuit confirmed that the heart of the definition is initiating charges without probable cause.[38]

As the Court has already determined, the officers reasonably believed they had—and in fact had—probable cause to arrest Richard for DWI.  And as Richard admits, "the resolution of this claim should be identical to the claim that there was an unlawful arrest."[39]  This finding necessarily forecloses Richard's malicious prosecution claim.[40]  Accordingly, the Court dismisses the malicious prosecution claim due to the officers' qualified immunity.

### 3.  Failure to Intervene

Richard's failure to intervene claim alleges that Officer Stovall did not intervene when Sgt. Zabojnik violated his constitutional rights, and Sgt. Zabojnik failed to intervene to stop Officer Stovall from arresting Richard for DWI when he knew Richard wasn't intoxicated.  An officer may be liable under Section 1983 for bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the

---

[37] *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (quotation marks omitted).

[38] *Id.*

[39] Richard's Brief in Response to Defendant Officers' Motion for Summary Judgment [Doc. No. 33 at 27].

[40] As a result of this finding, the Court need not reach the officer's additional arguments.

harm; and (3) chooses not to act."[41]

As addressed above, the Court concludes probable cause existed at the time of Richard's arrest. Additionally, the summary judgment record conclusively demonstrates a lack of knowledge of each officer that any other officer was violating Richard's constitutional rights. Officer Stovall and Sgt. Zabojnik swore to the fact that probable cause existed (a finding the Court confirmed). And Officer Kimpton who was monitoring the surroundings swore he had no basis to believe there was a lack of probable cause and would have intervened if he had such a basis.

Richard points to the same evidence he raised on the unlawful arrest claim to attempt to raise a genuine dispute of material fact regarding whether a constitutional violation occurred. But this evidence is unavailing of the same reasons it was in the analysis of Richard's unlawful arrest claim. Accordingly, the Court dismisses the failure to intervene claim due to the officers' qualified immunity.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** the officers' motion for summary judgment based on the affirmative defense of qualified immunity and dismisses the unlawful arrest, malicious prosecution, and failure to intervene claims against the officers. Additionally, the Court **DENIES** the motion to amend the complaint and the motion to amend the scheduling order.

---

[41] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

**IT IS SO ORDERED** this 28th day of August, 2020.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE